### SAMUEL BISHOP *v.* HUGH BABCOCK.

Where, for the purpose of ascertaining the division line between land of the plaintiff and land of the defendant, it became necessary to ascertain the true south west corner of the town of Readsboro, and the parties agreed, in writing, that a certain line should be the boundary between them, provided a corner, which they supposed to be the true south west corner of the town, should not be moved " on proper and lawful authority and manner," and that, if the true corner should ever be established to be in any other place, the boundary line between them should be located in accordance therewith, it was held, that the parties must have intended to refer to such a tribunal, for ascertaining the true corner of the town, as the law had invested with authority to decide the question.

And the parties having farther agreed, that, if the location of the corner of the town should ever be changed, and the division line between them be changed accordingly, the party, who should, in pursuance of this contract, have occupied land, which in fact was owned by the other party, should pay rent, after a rate agreed upon for each acre, for the land so occupied, it was held, that this did not create between them the relation of landlord and tenant, and that, upon the true location of the division line being ascertained, the party owning land in the occupancy of the other, under the agreement, might sustain ejectment against the occupant, without giving six months notice to quit.

But it was held, that the agreement between them was a sufficient license to the occupant to continue in possession of the land, while the contract continued unrevoked, and that no action could be sustained by the owner of the land against him, without first giving reasonable notice of his intention to commence such suit.

The act of the plaintiff, in such case, in turning his cattle upon the land previous to the commencement of the suit,—he having subsequently erected his portion of the division fence, as required by the contract,—cannot be considered notice of a revocation of the contract.

Judgment of the county court for the plaintiff, upon a report of referees, reversed in this court, and judgment rendered for the defendant.[*]

EJECTMENT for land in Readsboro. The action was referred, under a rule from the county court; and the referee reported the facts as follows.

The plaintiff and defendant, being owners of the north half of Lot No. 1 in Readsboro,—the defendant owning one fourth from

---

[*] See *Vanderburg et al.* v. *Clark, ante* page 185.

the westerly side, and the plaintiff owning the residue, and the lot being bounded on the west by the west line of the town,—agreed between themselves, in writing, July 17, 1844, that a certain line should be the permanent boundary between their respective land, " provided that the corner, understood by Erastus Hall, Otis Phillips and others to have ever been and still to be the established south west corner of Readsboro, shall not be moved on proper and lawful authority and manner, either to the eastward or westward of its present location ;" but that, if the south west corner of the town should be established either eastward or westward of what was then supposed to be the corner, then the north half of said Lot No. 1 should be divided between them by a competent surveyor, in the proportions respectively owned by them, and the westerly one fourth should belong to the defendant; and that, in such event, the defendant would pay to the plaintiff $1,50 per acre, as rent for the year ending July 1, 1845, and $1,00 per acre for every ensuing year, for all the improved land found to belong to the plaintiff, and pay all taxes thereon; and that after January 1, 1845, on reasonable notice, a lawful fence should be erected between their respective portions, as divided at the time of the contract between them. This agreement was signed by the parties, but was not sealed, or acknowledged. The defendant was in possession of the land sued for, under this agreement, at the commencement of this suit;—but it appeared, that the plaintiff had claimed, since the execution of the agreement, that the land in controversy belonged to him, and had turned his cattle upon it, but had subsequently erected his share of the division fence upon the line specified in the agreement. The plaintiff insisted, before the referee, that the agreement executed July 17, 1844, was void, for the reason that no person, or tribunal, was therein designated to ascertain the true south west corner of Readsboro ;—but the referee decided, that the parties, by their agreement, must be understood to have referred to such a tribunal, as the law had invested with authority to decide the question, and that a court of law was the proper tribunal. The defendant insisted, that an action of ejectment could not be maintained, unless six months notice to quit had been given ; but the referee decided, that no notice to quit was necessary. The referee found, that the ancient and established south west corner of Readsboro was twenty

rods west of the corner understood by Erastus Hall and Otis Phillips to be the south west corner of the town, and decided, that the plaintiff was entitled to recover the seisin and possession of the land described in his declaration.

The county court, June Term, 1849,—HALL, J., presiding,—accepted the report, and rendered judgment thereon for the plaintiff. Exceptions by defendant.

*J. L. Stark, Jr.*, for defendant.

The contract of July 17, 1844, was a sufficient legal instrument as a lease between the parties for one year; and if the defendant remained in possession thereafter, he held in accordance with the provisions of that contract, and became a tenant from year to year, requiring notice to quit, before the action could be sustained. 2 Pick. 71, note. 1 Ib. 332. 2 Aik. 240. *Flower* v. *Darby*, 1 T. R. 159. *Wood* v. *Salmon*, 4 Wend. 327. *Schuyler* v. *Leggett*, 2 Cow. 660. The agreement for the possession was for an uncertain period, and until the happening of the event mentioned in the contract; even if the contract is void as to duration, it creates a tenancy from year to year. *Kline* v. *Rickert*, 8 Cow. 226. 5 T. R. 471. 8 T. R. 3. Chit. on Cont. 319, 323. It was at least an agreement for a lease, such as a court of equity would enforce; and when possession has been taken under such an agreement, notice to quit must be given, before ejectment can be maintained. *Lewis* v. *Beard*, 13 East 210. 3 Taunt. 148. 2 T. R. 436. *Campbell* v. *Bateman*, 2 Aik. 177.

The parties evidently intended, by their contract, that the south west corner of Readsboro should be " established," so that the towns, and all persons, should be concluded by it. They did not intend, that this should be done by arbitration, or by suit between themselves; for all controversy was settled between them by the contract.

*T. W. Park* for plaintiff.

The agreement cannot operate to pass the title to the land, because such was not the intention of the parties, and the instrument was not under seal. If the parties contemplated a decision of the question of title by a court of law, the report of the referee is right.

It would be absurd to hold, that a court of law was the tribunal intended to determine the true line, and yet that a restriction was imposed upon the parties against resorting to such tribunal. No notice to quit was necessary, as the relation of landlord and tenant did not exist. The agreement was never intended as a lease, and had none of the requisites of a lease. The defendant claimed to hold in his own right, and not as lessee of the plaintiff.

If the defendant had license to occupy, it could be revoked at any time by the plaintiff. The act of entering on the land operated as a revocation. *Wood* v. *Leadbitter*, 13 M. & W. 837.

The agreement was void, because made under the belief, that there existed a tribunal, other than a court of law, by which the true corner of the town might be ascertained.

The opinion of the court was delivered by

KELLOGG, J. This was an action of ejectment for a piece of land, being part of lot number one in the town of Readsboro. The case was referred, and the referee submitted a report detailing the facts found and the decisions by him made upon the facts. The county court having rendered judgment for the plaintiff upon the report, the case comes here for revision upon exceptions by the defendant. It appears, that the defendant was the owner of the west quarter of the north half of lot number one, and the plaintiff the owner of the remaining three quarters. The controversy between the parties was in relation to the division line between them. To ascertain where that was, it became necessary to ascertain the west line of the lot, which was also the west line of Readsboro. The south west corner of the town being ascertained, there is no difficulty in determining the correct line between the parties. The referee finds the south west corner of Readsboro to be twenty rods west of where it was supposed to be by Hall and Phillips, and consequently that the division line temporarily established by the parties is too far east by the same number of rods, and that the plaintiff is the owner of the land, for the recovery of which the suit is brought. These facts cannot be controverted here, but must be assumed to be correct.

It was insisted before the referee, and has been urged here, that the written agreement of the parties is void, inasmuch as it does not

designate any person, or tribunal, to ascertain the south west corner of Readsboro; but we think the referee was correct in holding, that it was not void, and that the parties must have intended to refer to such a tribunal, as the law had invested with authority to decide the question. Such tribunal is a court of competent jurisdiction. Indeed, we know of no other having such authority, unless it be a board created by the voluntary act of the parties. It is also insisted, that the plaintiff is not entitled to recover, inasmuch as he did not give the defendant six months notice to quit. This objection is based upon the assumption, that the written agreement of the parties constituted the relation of landlord and tenant, and consequently that the defendant was entitled to the usual notice to quit. This objection, however, in the judgment of the court, is not well founded. It is not the ordinary case of a lease of land. By the settled law in relation to landlord and tenant, the tenant, by taking a lease, admits the title of his landlord. But in this case both parties claimed title to the land in question, and the agreement was made for the purpose of defining, for the time being and until the original south west corner of Readsboro should be established, the respective possessions of the parties, and providing the amount that should be paid by the defendant, if any portion of the premises so occupied by him should ultimately be found to belong to the plaintiff.

The referee decided, that the defendant was not entitled to the usual notice to quit, and farther, that he was not entitled to *any notice.*

The agreement of the parties was clearly sufficient authority to the defendant to occupy the premises. It was, at least, a license to him to occupy the land; and while it remained in force and unrevoked, he could not, for such occupancy, be regarded a trespasser. To hold him a trespasser under such circumstances would be most unreasonable and without precedent. The defendant, being in possession of the premises by the license and permission of the plaintiff, was at least entitled to *reasonable notice* of the plaintiff's intention to institute a suit to settle the disputed line. We therefore think, the referee was wrong in holding that the defendant was not entitled to any notice to quit.

It has been urged, that the act of the plaintiff in turning his cattle upon the land, was a revocation of the license, and that from that

Bishop *v.* Babcock.

time the defendant should be held a trespasser. We do not think, the facts in the case will justify such an inference. For after the plaintiff had turned his cattle upon the premises, he *still* went on and erected his share of the fence stipulated in the contract, thereby showing that he regarded the agreement still in force. There is no evidence in the case, showing a revocation of the license, or any notice to the defendant, prior to the commencement of the suit, of the plaintiff's intention to institute a suit to ascertain and establish the original south west corner of Readsboro. In the absence of such or some equivalent proof, we think the plaintiff was not entitled to recover. Consequently the judgment of the court below must be reversed, and judgment entered upon the report for the defendant.